[No. 7120. Decided March 6, 1908.]

DANIEL W. VREELAND, *Appellant,* v. THE CITY OF TACOMA, *Respondent.*[1]

MUNICIPAL CORPORATIONS—ASSESSMENTS—COLLATERAL ATTACK. A special assessment may be attacked collaterally where the city had no power to make any levy for the purpose, although no objections were made before the city council.

SAME—POWER TO LEVY ASSESSMENT—NATURE OF IMPROVEMENT—WATER MAINS—CHARTER—CONSTRUCTION. A city of the first class having general power to levy special assessments for local improvements, and to determine what work shall be done on that plan, may levy assessments for the construction of water mains, although that subject is not generally mentioned; and a provision limiting the amount to be expended for streets and sewers does not restrict the power to those subjects, especially where charter regulations respecting the method of assessment for street improvements, expressly refers to all other public improvements when the cost is to be charged against the property.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered October 21, 1907, upon sustaining a demurrer to the complaint, dismissing an action to quiet title. Affirmed.

*Emmett N. Parker,* for appellant.

*C. M. Riddell, J. W. Quick,* and *C. E. Dunkleberger,* for respondent.

HADLEY, C. J.—This action was brought to remove an alleged cloud upon title to real estate, and to enjoin the enforcement of a local assessment against the property for the construction of water mains. The property holder as plaintiff instituted the suit against the city of Tacoma as defendant. The city interposed a demurrer to the complaint, which was sustained, and the plaintiff having elected to stand upon

[1]Reported in 94 Pac. 192.

his complaint, judgment was entered dismissing the action. The plaintiff has appealed.

The respondent contends that the action is a collateral attack upon the assessment proceedings, and that it is not maintainable for that reason. It is argued that appellant's remedy is under the special procedure provided for the filing of objections before the city council prior to the confirmation of the assessment roll, and by appeal from the action of the council to the superior court, followed by appeal from that court to this one. Respondent's contention in this respect should, without doubt, prevail if the attack were one involving mere irregularities of procedure. Appellant, however, bases his attack upon the alleged ground that the city of Tacoma has no power in any case to levy and collect a special assessment on the local improvement plan for the construction of water mains. Upon that theory he contends that the city acted without any jurisdiction whatever, and that its action may be attacked in this manner. If appellant's theory as to entire want of jurisdiction in the city is correct, then the proceedings may, under well known rules, be attacked collaterally or otherwise. It therefore becomes necessary to examine the contention of the appellant.

Tacoma is a city of the first class, the people thereof having framed and adopted their own charter in pursuance of the constitution and laws of this state. The city is, and since the year 1893 has been, the owner of a system of water works for the purpose of furnishing the inhabitants with a supply of water. During all of said time the system has been maintained and operated by the city, and water has been furnished to consumers in consideration of prices paid as exacted by the city. At no time prior to the year 1906 did the city construct or extend its system of distributing pipes or mains except at the general expense of the city and its taxpayers, or with funds derived as revenues from the water works. During said year the city adopted a local improvement district and undertook to construct water mains upon the special assessment

plan, charging the cost thereof to the real estate within the district according to benefits. It was in this manner that appellant's property was assessed. No question is raised that the proceedings were not in form and manner consistent with the procedure adopted by the city for special assessments for local improvements.

The sole contention is that the city, through its council, had no power to declare the construction of a water main a local improvement which could be constructed on the special assessment plan. This court held, in *Smith v. Seattle*, 25 Wash. 300, 65 Pac. 612, that a water main is such an improvement as may be constructed upon the local improvement plan. The legislature of this state has also recognized that water mains may come within the classification of local improvements, the expense of which may be paid by special assessments upon property benefited. Laws 1899, ch. 124. Section 1 of that act expressly enumerates water mains among other things as constituting subjects for local improvements when the city shall have power or authority vested in it by its charter or by any law of this state to order the construction. The act provides a method for issuing bonds of assessment districts to pay the costs of such construction, and for assessing the property benefited, to be collected in annual installments for the purpose of paying the bonds. In Illinois a water main may be constructed on the local improvement plan: *Hughes v. Momence*, 163 Ill. 535, 45 N. E. 300; *Palmer v. Danville*, 154 Ill. 156, 38 N. E. 1067. In 25 Am. & Eng. Ency. Law (2d ed.), page 1176, the following comprehensive definition of what constitutes a local improvement is found:

"Within this rule, a local improvement may be defined as a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from an improvement which diffuses benefits throughout the municipality."

The same definition, in effect, appears in 25 Cyc. 1533, 1534. Under such comprehensive definitions it cannot be main-

tained, as argued by appellant, that when the term "local improvements" is used without more specific designation it should be held to be limited merely to street improvements and sewers.

Appellant argues that the power to make a special assessment for the construction of water mains is not found in the city charter. Section 52 of the revised charter of the city of Tacoma provides as follows:

"The City Government of Tacoma shall have power by ordinance and not otherwise—  . . .  Tenth—To provide for making local improvements and to levy and collect special assessments on property benefited thereby, and for paying the same or any portion thereof;  . . .  Thirteenth—To determine what work shall be done or improvements made at the expense, in whole or in part, of the owners of the adjoining, contiguous or proximate property, or others specially benefited thereby; and to provide the manner of making and collecting assessments therefor shall be as prescribed in this Charter."

It will be seen that the power conferred is very general. Subdivision 10, above quoted, broadly confers the power to make local improvements and collect special assessments, and, in the absence of any limitation, we think it must be held to include everything within the range of local improvement subject-matter. Again, subdivision 13 is just as broad in conferring power upon the city authorities to determine what work shall be done on the special assessment plan. It must be understood, of course, that the charter does not grant the power to arbitrarily declare any kind of work a local improvement without regard to its character. It must be of a character that confers special local benefits upon adjacent or proximate property within the legal definition of what constitutes a local improvement as given above.

Appellant argues, however, that subdivision 2 of § 52, *supra,* limits the charter powers for making local improvements to street and sewer construction. That subdivision is as follows:

"To provide for levying  . . .  taxes on real and personal property, for corporate uses and purposes, and to pro-

vide for the payment of the debts and expenses of the corporation; provided, that all taxes, whether general or special, exclusive of assessments for street improvements and construction of sewers, shall not exceed one and five-tenths per centum in any one year on the assessed valuation of the property of said city."

It will be seen that the provision in no way prohibits the doing of other classes of work as local improvements, but simply places the limitation upon the amount of general or special taxes that may be imposed in any one year, street improvements and sewer construction being declared as exempt from that limitation.

It is also contended by appellant that it was not the intention of the people when making the charter to confer local improvement powers upon the city authorities except for street and sewer construction, for the reason, as he alleges, that the scheme provided for levying and collecting special assessments is limited to those two subjects. Article 12 of the charter, comprising §§ 135 to 168, inclusive, treats of a method for making and enforcing special assessments, and article 13, comprising §§ 169 to 178, inclusive, is also devoted to that subject, the latter being confined to the subject of sewerage and drainage, while the former is more comprehensive. Appellant's theory is that article 12 is limited to provisions for assessments for street construction only. We find, however, that § 135, the opening one of article 12, refers in the very beginning to applications not alone for street improvement purposes, but also for "the improvement of public grounds or buildings, . . . and for all public improvements . . . where any part of the cost or expense thereof is to be assessed upon private property . . . " The above language seems clearly to contemplate that the city has the power to make other local improvements of a character different from those directly specified, and that the method of assessment there about to be outlined shall apply to all. If we should adopt appellant's view that the charter powers in the matter of local improvements are limited to street and sewer

construction only, we should be compelled to decide that the people in making their charter did not intend the words they used to import their full legal significance. This we are not authorized to do. No reason appears why the charter language shall not be given the comprehensive scope which it was apparently intended to have.

Respondent suggests that *Smith v. Seattle, supra,* is decisive of the points in this case. The case is in all essential respects similar to the one at bar. Appellant, however, points out this difference, that the charter of the city of Seattle specified water mains, among other things, as subject to construction on the local improvement plan, while the Tacoma charter does not in actual terms specify that subject. We have seen, however, that the broad language of the Tacoma charter includes every class of work that comes within the range of local improvements which may be constructed on the special assessment plan, and it must, therefore, include the construction of water mains.

A question much discussed in the briefs is whether, if the power is not found in the original charter, it has been conferred by subsequent legislative enactment having the effect of a charter amendment under the provision of art. 11, § 10, of the state constitution, that such charter "shall be subject to and controlled by general laws." Appellant contends that the charter cannot be so amended, and that any amendment must be made by the people of the city in order to conform to the constitutional intention to grant the powers of local self-government to cities of twenty thousand or more inhabitants. Inasmuch as we have found that the power is in the charter as made by the people of Tacoma, the above question is not necessarily in this case, and we shall not discuss it for that reason.

The judgment is affirmed.

FULLERTON, CROW, MOUNT, and ROOT, JJ., concur.